MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY *vs.* ST. PAUL, MINNEAP-
OLIS & MANITOBA RAILWAY COMPANY.

May 28, 1886.

**Easement — Railway Track along Right of Way of Another Com-**
**pany — Verbal Agreement for Change of Location.** — The Pacific
Railroad Company leased to the St. Louis Railroad Company, its succes-
sors and assigns, forever, the right to build, maintain, and operate a sin-
gle track railroad upon the land of the Pacific Company between certain
points south-eastwardly of the main track of the Pacific Company, the
single track to be located, built, and its grade established under the di-
rection and control of the superintendent of the Pacific Company. *Held*
that, after the track had been located and built, the parties might, by
mutual consent, pursuant to a verbal agreement, change the location of
the track within the limits specified in the lease, and that the track, as
relocated, being accepted and used as its track by the St. Louis Company,
the other company could not disturb it in such use.

**Same—Change by Mortgagees in Possession—Ratification by Acquies-**
**cence.**—If the verbal agreement to change the location were made by
one not authorized to bind the Pacific Company, the latter might become
bound by ratification, and that six years' acquiescence amounted to a rati-
fication.

**Same—Easement held Part of Railroad, and to Pass to Assignee of**
**Railroad.**—The lease was to the St. Louis Company, its successors and
assigns, forever.    Another clause provided that each and every covenant,
promise, and agreement should bind the successors and assigns of the re-
spective parties as if they had been specially named.    Another clause pro-
vided that none of the rights or privileges thereby granted should be
transferred, assigned, or sublet to, or permitted to be used or enjoyed by,
any other company or corporation.    *Held*, that the last clause only re-
strained an assignment or transfer separate from or independent of the
railroad of the St. Louis Company, but was not intended to prevent the
right or privilege granted passing to an assignee of the railroad of the
St. Louis Company as a part of such railroad.

Plaintiff brought this action in the district court for Hennepin
county, in May, 1885, alleging itself to be a corporation formed in
June, 1881, by the consolidation of a then-existing corporation, of

the same name, with the Minneapolis & Duluth Ry. Co. and two Iowa railway companies.

In its complaint the plaintiff further alleges that on August 27, 1874, the First Division of the St. Paul & Pacific Railroad Co. (afterwards in the complaint styled the Pacific Co.) was the owner in fee-simple of a described strip of land in Minneapolis, extending from River street (on the west bank of the Mississippi river) westerly to Sixth street, upon which it then had and operated a railway; and that on that day the Pacific Co. made an agreement with the then Minneapolis & St. Louis Railway Co., (afterwards in the complaint styled the St. Louis Co.,) "whereby the Pacific Co. granted and conveyed unto the St. Louis Co., its successors and assigns, the right to construct, maintain, and operate forever a single-track railroad upon the strip of land aforesaid between the centre of Sixth street and the east line of lot 7 in block 9, Minneapolis," "on the south-easterly side of the main track of the Pacific Co. as then constructed between said points, and at a safe and proper distance therefrom," and that soon afterwards, and in the same year, such track was built by the St. Louis Co., under the agreement. The complaint also states the consideration for the grant by the Pacific Co., showing it to have been valuable and substantial.

The complaint further alleges "that afterwards and in the year 1878, while the rights and properties of the Pacific Co. were in the hands and under the charge and management of one J. P. Farley, as receiver duly appointed by the district court of the state of Minnesota in and for the county of Ramsey, an agreement was made between the Pacific Co. and the said Farley as the receiver thereof and the said St. Louis Co., whereby and under which the St. Louis Co. surrendered to the Pacific Co. and the said Farley as receiver thereof the said single-track railroad and the right-of-way upon which the same was situated, between the easterly line of Washington avenue north and the centre of Sixth street north, in consideration of which the said Pacific Co. and the said Farley as receiver thereof agreed to grant and convey, and then did grant and convey, unto the St. Louis Co. the right to construct, maintain and operate forever a single-track railroad upon and along the southerly 15 feet of the right-of-way of

the Pacific Co. between the centre of Sixth street north and the easterly line of block 9, Minneapolis," (which last point is near First street,) "and then agreed to construct and then did construct, upon the said last-described 15 feet, between the easterly line of Washington avenue north and the centre of Sixth street north, in said city, a single-track railroad for the St. Louis Co."

The complaint further alleges that the defendant "succeeded to and became vested with the rights, properties and franchises of the Pacific Co. by virtue of and under certain foreclosure proceedings against the Pacific Co., in which the said Farley was appointed receiver as aforesaid, in the year 1879, but subject to the rights granted to the plaintiff, as aforesaid," and "that the said St. Louis Co., up to the time of said consolidation, and the plaintiff since that time, have had the continuous and exclusive possession of said single-track railway pursuant to and under said agreements."

The complaint further alleges "that in reliance upon the permanent and perpetual right to maintain and operate said single-track railroad, the St. Louis Co., shortly after the relocation and exchange thereof as aforesaid, at an expense of more than $30,000, purchased the necessary land and constructed thereon certain freight houses and side tracks along the southerly side of said single-track railroad between Third and Sixth streets north in said city."

After stating (with other matter not here material) that defendant proposed to tear up this track,—a fact not disputed,—the complaint prays a decree "quieting and confirming in the plaintiff the exclusive right to maintain and operate said single-track railroad upon 15 feet of land upon which the same is situated," (describing the strip,) "and that the defendant be enjoined and restrained from entering upon said single-track railroad or the said strip of land 15 feet in width upon which the same is situated, or from running any cars, engines, trains, or other vehicles upon the same, or from interfering with the possession thereof by the plaintiff, or the running of cars, engines, trains or other vehicles thereon by the plaintiff," and for a like injunction *pendente lite.*

The defendant, in its answer, admits the agreement of August 27, 1874, alleges that it was in writing under the corporate seals of the

two companies, and denies that any other or different agreement was ever made between the companies concerning the matters complained of.

It denies that Farley was ever the receiver of the Pacific Co. or of any of its rights or properties, or that they were ever in his hands or under his control as receiver, and denies that he ever had any right or authority of any kind to grant or convey to the St. Louis Co., or to any one, the rights alleged in the complaint or any rights or estate in, or use of, the land owned by the Pacific Co.

It also denies that Farley ever agreed or undertook to grant or convey to the St. Louis Co. the rights described in the complaint, or any rights whatever in the land of the Pacific Co.

The material provisions of the contract of August 27, 1874, (which was made between the First Division of the St. Paul & Pacific Railroad Co. and its mortgage trustees, as parties of the first part, and the original Minneapolis & St. Louis Ry. Co. as party of the second part,) are as follows:

"*Third.* The said parties of the first part hereby lease to the said party of the second part, and to its successors and assigns forever, the right to build, maintain and operate a single track railroad upon the lands of the said First Division Company in Minneapolis between the following points, to wit: From the present point of junction of the road of the Minneapolis and St. Louis Railway Company, on the east line of lot seven, (7,) in block nine, (9,) in Minneapolis, near Itaska street, westwardly to the centre of Sixth street, where the said First Division Company's road now crosses said street. The track so to be built by said Minneapolis and St. Louis Company is to be built south-eastwardly of and parallel with the main track of said First Division Company as now constructed between said two last named points, and at a safe and proper distance from said main track, and is to be located, built, and its grade established under the control and direction of the superintendent of the said First Division Company; and the work of building the same is to be prosecuted at such times and in such manner as to interfere as little as possible during construction with the use of the adjoining passenger station and freight yard by the said First Division Company. The connections

to be made between the two main tracks of said companies, and also the connections between the said proposed main track of the said party of the second part, and the side-tracks on the south-easterly side thereof which the said First Division Company now has or may hereafter desire to put in, are all to be made in a manner satisfactory to the superintendent of the said First Division Company.

"*Fourth.* When the main track of the said party of the second part shall have been completed between said point of junction near Itaska street and said Sixth street, and its necessary connections made with other tracks in a substantial and satisfactory manner, and at the expense of the said party of the second part, as heretofore provided, it is mutually agreed that for the purpose of operating and maintaining the same it shall be taken charge of and kept up and controlled between said last-mentioned limits by the party of the first part, and both said main tracks within said limits are to be used jointly by the trains and cars of both said companies, in such manner and under such rules and regulations as may from time to time be prescribed by the superintendent of the said First Division Company, having reference to safety and the prevention of accidents, and the securing such joint use in such manner as shall facilitate at all times the passage and transit of the cars and trains of said second party across said limits on one or the other of said main tracks with the least possible or necessary detention or delay, and as shall occasion the least practicable interference with the trains and business of said first party; the object of both parties to this contract being, in providing for a second track between Sixth and Itaska streets, as aforesaid, to reduce as much as possible the chances of such interference; it being understood and agreed that the party of the second part will not arrange for any two of its trains to meet or pass each other so as to occupy two tracks at the same time between the limits aforesaid without the consent of the party of the first part.

"*Ninth.* Each and every convenant, promise and agreement contained in this instrument, shall bind the successors and assigns of the respective parties hereto, to the same extent as if such successors and assigns had been specially named therein.

"*Tenth.* It is stipulated and agreed by and between the parties hereto, that none of the rights or privileges hereby leased or granted to the party of the second part shall be tranferred, assigned, or sublet to, or permitted to be used or enjoyed by, any other person, company, or corporation, except the Minneapolis and Duluth Railroad Company, which last-named company may use and enjoy the same so long as it is controlled and operated by said party of the second part, and no longer."

The cause was heard by *Young, Lochren,* and *Koon,* JJ., upon testimony taken before a referee.

The court found, as facts, the making of the contract of August 27, 1874, which it designates as "Exhibit A," and that soon after it was made, and in the year 1874, the right-of-way necessary for the single-track railroad it required to be built "was designated and set apart by said Pacific Co. for said St. Louis Co., pursuant to said agreement, being a strip of land 15 feet in width,   *   *   and said single-track railroad was then constructed thereon by said St. Louis Co., and was thereafter, until as hereinafter stated, operated and maintained by said companies, under and pursuant to the terms of said agreement; and said St. Louis Co. paid the consideration, and fully performed all the conditions and agreements by it to be done and performed, as stated and specified in said agreement.

"That said single-track railroad, so constructed and operated, was north of the passenger depot of said Pacific Co., and next to and parallel with a railroad track owned and operated by said Pacific Co., said track of said St. Louis Co. being between the track of said Pacific Co. and its passenger depot aforesaid."

Upon the matters put in issue by the pleadings, the court made the following findings :

"That in the year 1878, the rights and properties of said Pacific Co. were in the possession and control of certain persons as trustees for the mortgage bondholders of said Pacific Co., and said trustees were running, managing and operating said railroad, and had in their employ as general manager and superintendent thereof one J. P. Farley.

"That during said year 1878, while said trustees and said Farley were so in the possession and management of the affairs and properties of said Pacific Co., it was deemed for the best interests of both the Pacific and St. Louis companies that the single-track railroad which, under said agreement, 'Exhibit A,' the St. Louis Co. had the right to construct, maintain and operate on the land of said Pacific Co., should be relocated, and, instead of running where it then was, upon the north side of said passenger depot, should be located and built upon a strip of land farther south, so that the same would run south of said passenger depot; and a line therefor 15 feet in width upon the land of the Pacific Co. first herein described was located, fixed, and determined upon by said Farley and said St. Louis Co., and said Farley caused to be built thereon a single-track railroad upon the line described in said complaint, and, when constructed, said last-named single-track railroad was turned over to, taken possession of, and was thereafter occupied, used, and controlled, by said St. Louis Co. as and for its own track, under and pursuant to the terms of said agreement, 'Exhibit A;' and the track built and theretofore owned and occupied by the St. Louis Co., north of said passenger depot, was surrendered up to and accepted in lieu thereof by said Farley, and such transfer of the right-of-way, and exchange of tracks, was assented to by said trustees and by said Pacific Co. Such agreement for said relocation of right-of-way and exchange of tracks was not in writing, but rested wholly in parol.

"That the plaintiff is the successor in interest of the Minneapolis & St. Louis Railway Co., as the same existed in 1874 and 1878, and is vested with and the owner and possessor of all the rights, properties, and franchises of the said St. Louis Co., by virtue of and through certain consolidation proceedings and agreements set forth and stated in said complaint, and as such successor has been, ever since said consolidation, and still is, in the possession, use and occupancy of said single-track railroad, and claims to be the owner thereof, and such track is a necessary and essential and important part of its main line of railway.

"That defendant is a corporation, as alleged in said complaint, and in the year 1879 acquired by purchase at foreclosure sale, and now

owns, all the rights, properties, and franchises then owned and held by the said First Division of the St. Paul & Pacific Railroad Company, and acquiesced in and assented to the exchange of tracks and relocation of right-of-way made, as hereinbefore stated, in the year 1878, and is now, and ever since it acquired the rights and franchises of said Pacific Co. has been, in the possession, use and control, and claims to be the owner, of the said single-track railroad built on the north side of its passenger depot by said St. Louis Co., and exchanged, as hereinbefore stated, in 1878, for the track built by said Farley on the south side of said passenger depot now in the possession of and claimed by the plaintiff herein."

The court also found that the defendant claims that plaintiff is not the owner of the track in question, and denies that plaintiff has any rights in it or in the strip of land on which it is built, and threatens and intends to tear up the track, and take possession of the strip of land, 15 feet in width, on which it is built. The court also finds that the contract of August 27, 1874, "has never been abrogated, abandoned, nullified, or set aside, and is still in full force and effect, and binding upon both the plaintiff and defendant."

As conclusions of law the court held that when the track had been built by the St. Louis Co. under the contract of 1874, in the location designated by the superintendent of the Pacific Co., "such designation and location could not be changed by either party thereafter without the consent of the other; but we think it was perfectly competent and legal for the parties afterwards mutually to alter or change the location of such right-of-way, provided the same was kept within the limits designated by the agreement; and we see no legal objection to the relocation made or to the exchange of tracks which was made in connection therewith.

"The track built by the St. Louis Co. upon its first designated right-of-way belonged to it, and when the location of its right-of-way was changed, if said track was to remain upon the old right-of-way, it was only fair and right for the Pacific Co. to construct for the St. Louis Co. a track upon the new line in exchange for the one so owned by the St. Louis Co. That we consider to be the force and legal effect of the arrangement made in 1878. It was simply a mutual reloca-

tion of the right-of-way granted by the agreement, 'Exhibit A,' and an exchange of railroad tracks, which undoubtedly was for the best interests of all parties concerned.

"By this agreement, 'Exhibit A,' the location of the line of the St. Louis track was to be fixed by the superintendent of the Pacific Co. It was a matter entrusted to the operating department of the road to determine, and that department, whenever another location appeared to be more desirable or advantageous, might, if the St. Louis Co. assented thereto, change the location.   Farley was the superintendent in control of and operating the Pacific road when the change was made, and no one appears to have questioned his authority to make the exchange.   The Pacific Co. took and the defendant has kept and now occupies and enjoys, and claims to own, what Farley got by the exchange; and we think the defendant cannot now be heard to question its validity.

"Whether plaintiff is or is not entitled to the exclusive use, possession and control of said track we do not feel called upon to determine in this case.   It is entitled, we think, to at least the same ownership, use, and control thereof which the St. Louis Co. had in and t⁻ the track first built by it upon the line first designated under said agreement, 'Exhibit A,' and is therefore entitled to judgment declaring it to be the owner of said railroad track, and quieting its title to the same and to the perpetual use of the strip of land 15 feet in width upon which the same is constructed, and that defendant be restrained and enjoined from tearing up, removing or obstructing said railroad track, or interfering with plaintiff's use of the same or of said strip of land upon which the same is constructed, except according to the terms, conditions and stipulations of said 'Exhibit A.'"

The defendant caused to be made, allowed, and included in the judgment-roll a settled case containing all the evidence, and appealed from the judgment entered on the decision.

*R. C. Benton, C. E. Flandrau,* and *Geo. B. Young,* for appellant.

*J. D. Springer, E. M. Wilson, J. M. Shaw,* and *John B. Atwater,* for respondent.

GILFILLAN, C. J.   The objections to evidence insisted on here are based on the proposition that it was incompetent to prove by parol

the relocation of the line to be used by defendant within the general limits of the right of way granted, ¡ d the acts of the parties pursuant to such relocation; and as we old that those matters might be proved by parol, the objections we: ¡ not well founded.

We see no reason to question the coi 'ectness of findings of fact by the court below. The contract of August 27, 1874, between what in this case is designated the Pacific Company and the Minneapolis & St. Louis Company, is conceded to be valid and binding on the parties hereto. By that contract the Pacific Company leased to the St. Louis Company, "*and to its successors and assigns, forever,* the right to build, maintain, and operate a single track railroad" upon the lands of the Pacific Company between certain points, the track to be built south-eastwardly of and parallel with the main track of the Pacific Company as then constructed, and at a safe and proper distance from the same, and to be located, built, and its grade established under the control and direction of the superintendent of the Pacific Company; the track, when built, to be taken charge of, kept up, and controlled by the Pacific Company, and both that and the main track of the Pacific Company to be jointly used by the trains and cars of both companies in such manner and under such rules and regulations as might from time to time be prescribed by the superintendent of the Pacific Company, having reference to safety and the prevention of accidents, etc. The contract contains other covenants and agreements on the part of each of the contracting parties.

The contract does not precisely locate the line along which the track should be built. The land over which the right of way granted is to extend is defined only generally, to wit, the land of the Pacific Company south-eastwardly of its main track between the points designated. Had the contract contained no provision regulating the use of the right of way, nor for locating its precise line, the St. Louis Company would probably have had a right of election (to be reasonably exercised in view of all the provisions in the contract) to lay the track on any part of the thus generally described right of way. But the contract provides that the track shall be located, built, and its grade established under the control and direction of the superintend-

ent of the Pacific Company. When it was thus located, and the track constructed accordingly, neither party could, without the consent of the other, change its location or require it to be changed. A location of it by the superintendent upon the line to which it was afterwards changed would have been within the terms of the contract, and within the general limits of the right of way. The tract was constructed where at first located by the superintendent, and it was used jointly till 1878, when, pursuant to oral agreement between the St. Louis Company and one Farley, general manager of the Pacific Company's road for the trustees in its mortgages in possession, the latter built another track southerly and at some distance from the first, to be used by the St. Louis Company in lieu of and as a substitute for the track it had constructed. The latter company adopted and ever afterwards used that as its track, and abandoned the use of the track constructed by it, and since that time the latter track has been used solely by defendant.

We see no reason to doubt that by mutual consent the parties could relocate the line to be used by the St. Louis Company, after it had been once located, and that if the line as relocated were within the general definition for the right of way contained in the contract, it would be within the contract, and would be held and enjoyed under and be dependent on it, and that no new written contract would be necessary to assure the St. Louis Company in the use and enjoyment of it.

It is immaterial whether Farley had authority to agree to a change in the location of the track; for, if without authority originally, his agreement and acts might become binding by ratification; and the acquiescence for six years by defendant in the change of track is a ratification.

It follows from what we have said that the defendant has no right to interfere with the St. Louis Company's use and enjoyment of the track thus substituted for its original track.

But, says the defendant, the rights and privileges granted to the St. Louis Company were by the express terms of the contract of 1874 not assignable, and this plaintiff, not being the original St. Louis Company with which that contract was made, but being a consolida-

tion or aggregation of several other railroad companies with the original St. Louis Company constituting a different company, it can claim under the contract only as assignee of the St. Louis Company.

The lease of the right of way was to the St. Louis Company, "and to its *successors and assigns, forever.*" The ninth paragraph of the contract is: "Each and every covenant, promise, and agreement contained in this instrument shall bind the *successors* and *assigns* of the respective parties hereto to the same extent as if such *successors* and *assigns* had been specially named therein." And the tenth paragraph is: "It is stipulated and agreed by and between the parties hereto that none of the rights or privileges hereby leased or granted to the party of the second part shall be transferred, assigned, or sublet to or permitted to be used or enjoyed by any other person, company, or corporation except the Minneapolis & Duluth Railroad Company, which last-named company may use and enjoy the same so long as it is controlled and operated by said party of the second part, and no longer." Apparently there is an inconsistency between the intent expressed in defining the right granted, and also in paragraph 9 and the intent expressed in paragraph 10. If this inconsistency could not be reconciled so that the several provisions might stand, it would have to be removed by application of the rule that where a deed grants an estate, and contains a reservation, exception, or condition repugnant to the grant,—that is, tending to destroy it,—the reservation, exception, or condition must be rejected. But an interpretation of these various clauses with reference to the subject-matter of the contract, and the business and situation of the parties, will render the application of this extreme rule unnecessary, and leave each of the clauses to have effect.

The purpose of the grant was clearly to empower the St. Louis Company to make the track to be laid over the land of the Pacific Company a part of its line of railroad, and to be used as and be a part of it forever, and consequently to pass with that railroad as a part of it, if it should at any time be transferred as a whole; and there may have been reasons—undoubtedly were—which would induce the Pacific Company to deny the right to transfer the track over its land, or permit its use independently of the railroad of the St.

Louis Company, perhaps, as a part of some other railroad. This evidently furnishes the key to the proper interpretation of the apparently inconsistent provisions of the contract that the rights granted were intended to be appurtenant to the line of railroad, and not severable from it.

It is claimed, however, that the use of this right of way by the consolidated company subjects it to a greater burden than was contemplated by the parties. There is no basis for this claim. The parties were contracting with reference to the business of conducting railroads, and the manner in which that business is and always has been carried on. It must have been expected, of course, that the St. Louis Company would get for its road all the business in carrying passengers and freights that it could; that at each terminus it would seek to get for carriage passengers and freights destined to or beyond its other terminus, and probably encourage the construction of other railroads to each terminus, or to other points on its line, in order to bring it business. It is impossible to see how an arrangement made by it with some other railroad company for receiving, say at its southern terminus or at any other points on its line, passengers and freights in the same cars in which they should be brought by such other railroad to such point, and passing them in the same cars over its own line, (and, so far as relates to carriage of passengers and freights, that is all that the consolidation amounts to,) increases the burden on its own line beyond what it would be if the same passengers and freights were at such point transferred from the cars of such other company to its own.

Judgment affirmed.

---

The defendant, on June 4, 1886, moved for a reargument. The following dissenting opinions were filed June 25, 1886, upon the entry of an order denying the motion:

MITCHELL, J., (*dissenting.*) Upon a consideration of the motion for a reargument, I have become strongly impressed with the feeling that in the decision of this case there may have been some misap-

prehension as to the facts established by the evidence. Assuming that there is evidence tending to show that Farley and the trustees of the mortgages intended and agreed to make a permanent exchange and relocation of the track to be used by the St. Louis Company, under the contract of 1874, and that in so doing they assumed to act for and as the agents of the Pacific Company, it seems to me clear that they had no authority to make any such contract. Hence, if the Manitoba Company, as the successor of the Pacific Company, is bound by the acts of Farley and these trustees, it must be on some principle of estoppel or of ratification. The evidence discloses no element of estoppel, and I can hardly see how a ratification is established by the mere fact that the Manitoba Company, after it came into possession of the road, for a time acquiesced in the St. Louis Company continuing to use this track.

My impressions, therefore, are that a reargument should be granted.

VANDERBURGH, J.   I am also of the opinion that there should be a reargument in this case.